Good morning, Your Honors. May it please the Court, my name is Trent Baker, and I represent the relators and appellants in this case, Fawn Cain, Sandy Ovett, and Tanya Archer. They were all three employees of Salish Kootenai College, which I'll refer to as SKC, and were instructors and clinical coordinators and mentors for students. Sandy Ovett was the grants coordinator, and they were terminated after they reported that grades of students were being changed, students were being improperly retained, and it appeared that all of this was being done for purposes of preserving and obtaining federal grant funds for the nursing program. As a result of this conduct by SKC, these students were not being adequately educated such that when they graduated, they were unable to pass their nursing boards, many of them. And ultimately, SKC was put on probation by the Montana Board of Nursing in recognition that there were these problems with the students they were graduating. And so when that was reported by my clients, they were summarily terminated, resulting in the filing of this suit under the False Claims Act. This suit was filed in 2012, and then was later dismissed upon the motion of the defendants. That motion was based on tribal sovereignty grounds, and that was the basis upon which the district court dismissed the case. Now, you've got a pending suit against the individual defendants still, but that question is not in front of us. That is correct, Your Honor. The court dismissed with prejudice the claims against SKC, the We have not appealed the ruling as to the foundation. And then they also, the court also dismissed claims to the extent they were construed or could be construed as claims against the individual defendants in their official capacities. But the court allowed us to amend to clarify that those individuals were being sued in their personal or individual capacity. And the suit against individual defendants in their official capacity is tied to the claim against the tribe, I'm sorry, against the college, right? Yes, that's correct, Your Honor. So it stands or falls on the same? On the basis of this court's ruling, yes. So we should get on with our question. Okay. The first issue I wanted to address, and I'd like to reserve three minutes for this, is that the jurisdictional discovery was not allowed in this case. There was some exchange of documents, and the court, during oral argument, offered What would you have discovered that would be relevant to the question that we have in front of us? Well, that is a very good question, and one that I can only partially answer. Obviously, I don't know what all is out there, but there are facts that continue to arise today that I think are relevant to an arm of the tribe or Eleventh Amendment, arm of the state style analysis. That's a factual inquiry. And without the ability to look into I do want you to answer Fletcher's question. Are you disputing whether the tribe is a person or are you disputing whether the college is an arm of the tribe or both? I'm disputing whether the college is appropriately considered an arm of the tribe. So you concede or you don't dispute that the tribe itself is not properly sued, right? I do not. And the reason I ask this question, because understanding the answer to Judge Fletcher's question as to what you could discover. So please continue with that question. I just want to make sure I understood what it is you were exactly disputing. Yes. Thank you, Your Honor. And to your question, Judge Fletcher, facts continue to arise even as recently as the supplemental materials submitted by the defendants before this court. They submitted a title report that showed leases to SKC. Now, they did that for purposes of showing that SKC is located on tribal land. But what that title report also showed were separate leases to an entity known as S&K Community College. And that is one of the issues that we raised is the identity of the college itself, its corporate identity. There were tribal articles of organization filed for an entity known as S&K or Salish and Kootenai Community College. Those tribal articles of organization or incorporation were never amended to reflect the name of the defendant that we sued, SKC, Salish and Kootenai College. The state articles of organization were filed subsequent to the tribal articles and they were different in a couple of respects. One, they were different in the level of control maintained by the tribe over SKC. And two, they were different in that they had a much broader waiver of sovereign immunity contained within those state articles. Now, the question of whether these two entities are the same, how they are related, is an issue that I think is important to the question, the arm of the tribe analysis. There are other issues as well, I think, that were not considered by the Smith Court, which is the basis upon which the district court said, I'm just going to assume that this is an arm of the tribe based on this prior ruling. You're a little more specific. You say irrelevant, but what work would they do? I mean... Well, I think you can't simply ignore the difference in the names of these entities that are filed with the state versus the tribe. The state entities continue to have been maintained. They updated the articles. They amended the articles to reflect the new name. They continue to maintain that organization, filing annual reports. There's been no amendment with respect to the tribal articles for this older community college entity. And these leases that were recently raised by the defendants, those would be terribly interesting in terms of determining the financial relationship between the tribe and the college, which I think is one of the critical factors that are considered in an FCA sovereign immunity analysis is functional and direct liability. Would a judgment against SKC be effectively a judgment against the tribe? And so that type of financial relationship, I think, is one that should be explored for purposes of determining whether SKC is an arm of the tribe. We didn't have an opportunity to do that or had a very limited opportunity to do that. The Smith case never addressed the fact that there was a waiver in this state articles of incorporation for the SKC. But isn't that just a proformal requirement that you have to do in order to register with the state? I don't believe that it is. It doesn't have to be in the articles of organization. There's no requirement or articles of incorporation. There's no requirement to that effect that I'm aware of. And the articles before the tribe, I mean, they had a waiver in there. So there was an intent, even as to this community college entity, to waive sovereign immunity to some level. They waived it to allow suits to proceed in tribal court. Then it was subsequent to that that the articles of organization were filed with the state of Montana. They contained a broader waiver that was not limited to tribal court. And that waiver is meaningful. That document is meaningful. It has to be given some effect. Was there anything in that document beyond the phrase agreeing to sue and to be sued? Was there anything beyond that indicating a waiver? No. That was the extent of the waiver in that document. So the waivers have to be expressed. And I believe that is an express waiver, Your Honor. It says that they are consenting to sue and be sued. And that's not limited. The sue or be sued waiver question is, I think, somewhat different from the question as to whether or not the college is an arm of the tribe. And indeed, if there's a waiver of sovereign immunity as to the college, that rather suggests that the college is an arm of the tribe. Otherwise, you don't need the waiver. But I have a separate question. And that is, even if there is a valid waiver of sovereign immunity, that doesn't tell us whether the False Claims Act intended to subject the tribe to suit. That is to say, if the statute doesn't intend to subject the tribe or its arm to suit, whether the tribe is a way of sovereign immunity makes no difference. Well, I think those issues are related. And I understand your question. And this is an issue raised by the defendants in that they say the False Claims Act definition of person does not include a sovereign. And if that's so, then whether the sovereign waives immunity or not is irrelevant. And I don't necessarily agree with that. And here's why. When you look at the cases that examine the arm of the State issue with respect to False Claims Act cases, because that's what most of them are, arms of the State, that arm of the State analysis specifically includes as a factor whether there's been a waiver of immunity. So that issue comes back in and is important to determining whether SKC is an arm of the tribe when you look at those factors. Now, if you look at the standard arm of the tribe analysis, the breakthrough management factors that were used by this court in the White case, they're a little different. They're not the same as the FCA examination under the 11th Amendment, the arm of the State analysis. And it's important, I think, to think of the context in which you're examining the issue of sovereign immunity. This Court's case law says that, and it's cited in my brief. And so when you look at FCA cases, these are economic issues. And the direct and functional liability of the tribe or the State is the primary consideration. Now, when you look at the arm of the tribe analysis that's not specific to the FCA and hasn't been used as frequently in that context, it doesn't have that same focus. And I think that context is important here because under the FCA, what we're really talking about is the financial liability for a potential judgment for defrauding the government. And the issue in the Smith case, relied on by defendants and relied on by the district court, was one of civil jurisdiction over a motor vehicle accident, personal injury claim, different context. Are there cases anywhere that apply the arm of the State doctrine to tribal sovereign immunity cases? Not that I located, Your Honor, but the cases are, I think, much more prevalent in terms of explaining why the arm of the State analysis is applicable to False Claims Act cases. And it's that economic issue, which I think is present here, and I think those factors are more appropriately considered by this court in determining the arm of the tribe issue. But I think the waiver trumps that issue. I think if there's a waiver, then they're not an arm of the tribe, and they're subject to suit of the FCA. But I read waiver absolutely opposite. That is to say, the only reason for a waiver is that they're otherwise entitled to sovereign immunity, and that means they're the sovereign. Well, I think it may be that the waiver of sovereign immunity is unnecessary because they're not the sovereign, but the fact that they've waived sovereign immunity doesn't tell me that they're not the sovereign. It tells me quite the opposite. I understand what you're saying, Your Honor, and I would just point to the issue in, I'm that as a matter of law, an Indian tribe is subject to suit when Congress has authorized suit or there's been a waiver. And so I think it's an either-or situation there, and the waiver is an issue. Thank you, Your Honor. I'll reserve the rest of my time for rebuttal. We'll hear from the other side. Good morning, Your Honors. May it please the Court, my name is Martin King. I'm an attorney from Missoula. I represent the defendants, Salish Kootenai College Foundation and the individual defendants. With me today are John Harrison and Rhonda Sweeney from the Confederated Salish Kootenai Tribes. I will be sharing five minutes of my time with Mr. Harrison to argue on behalf of the tribe. As Your Honors clearly recognize, this is a case concerning the False Claims Act, and specifically whether or not a sovereign is a person as defined under that act and can be a defendant under that act. Judge Morris, a United States District Court judge from Montana, determined rightfully based on Stevens that a sovereign, such as a person as defined under the act. I didn't hear, I thought I asked a specific question opposing counsel, and he didn't seem to dispute that. Correct, and that was good to hear because I know that in his briefs he did. Do we need to hear from Mr. Harrison? Pardon me? Do we then need to hear from Mr. Harrison? Well, he has some comments, I think, on the relationship between the tribe and the college. Okay, that's fine. I won't read into your time. Okay, thanks, Your Honor. The tribe is conceded. I don't know. I think that's right. It needed to be conceded, so. That's right, Your Honor, which I'm glad to hear. So, we're focusing then just on whether or not the Salish Kootenai College, my client, is an arm of the tribe, and if it is, it shares in the sovereignty of the tribe vis-a-vis the False Claims Act. Why don't they get discovery on that? As Judge Morris pointed out, I'm not sure any more discovery would change the relationship between the parties, but they were provided. Not sure. Not sure is kind of a tentative answer. I mean, if you're not sure, maybe we better find out. Well, let me restate that. I'm absolutely sure. What if I'm not? Well, let me try and assure you if I can. The fact is the relationship between the tribe and my client has been litigated repeatedly. Even though the Smith case had to do with civil jurisdiction, this court examined in length and in detail the relationship between those two parties. Did they have, for example, all the lease arrangements in front of them at the time of the Smith case? I don't know that they had all the lease arrangements, but they had virtually every other document, including the articles of incorporation that were filed with the tribe and with the State. Sounds like those leases are pretty important then. I don't think that they are, Your Honor, because what they show is this. I don't dispute that their college is on tribal property on the reservation, and that the documents that we submitted show that those are leased from the tribe by the college for basically no rent on an annual lease. What do we know about the budget of the college? Who pays what and so on? Well, most of the finances that the college obtains, it obtains through grants. And I don't know that there's evidence to suggest that the tribe pays for the college, but the... Is there evidence that the tribe receives money from the college? I think the tribe receives other benefits from the college, primarily education of tribal members. When you say, I think... Well, again, I know. I'm sorry. Absolutely receives a benefit from the tribe. We're really less interested in what you think or know and more what's in the record. Well, the record is, Your Honor, that Judge Morris went through the analysis of the arm and the tribe analysis. That's not the record. That's a ruling by the court. The record is stuff like documents, depositions, title, records, stuff like that. That's the records. Correct. I understand. Referring to the district judge's ruling can't self-authenticate. So what is in the record? What is in the record is first the charter by the tribe in which it created the Salish Kootenai College. Also in the record is the... What is there in that? That the tribe was... That the college was created by the Salish Kootenai tribe by the board of directors. It could be created and not necessarily be an arm of it. Sure. I mean, the tribe could, for example, charter a corporation. Do they call it charter these days when you get a corporate entity from the state? You could get and create a corporation, right? That that would not be an arm of the tribe necessarily. Well, here they... So the fact that they created the entity doesn't mean it's an arm. Well, I think it is under the first element of the white test is how that was created. That's element number one. And what happened was... But not sufficient, obviously. Pardon me? Not sufficient, obviously. Well, for element number one under the white test of the arm of the tribe analysis, how that... That element is not sufficient. No, but that's element one. Element number two is how it's been managed and structured. And all of the board members that serve for the Salish Kootenai College do so at the discretion of the tribal council. Their admission as board members are decided by the tribal council. Their removal from board members is decided by the tribal council. The third element or the second element has to do with the purpose behind its formation. And here clearly the purpose was to educate tribal members and to further the culture of the Flathead Reservation tribal members as set forth in the mission statement for the tribal college. As I said, the structure and ownership is controlled exclusively by the tribal council. Is there some dispute as to how many students in the college are tribal members and how many are not? I don't think there is a dispute, Your Honor. The majority of the members of the students in the college are Native Americans and more than 50% are Flathead Indians or members of the Flathead Reservation. And what's the charge under the False Claims Act? The charge under the False Claims Act is that there were grants that were improperly obtained through alleged misrepresentations regarding the students and that that constitutes a false claim. In terms of alleging the tribal membership of how many students? I thought that the False Claims Act charge had to do with how many of the students were in fact tribal members. Am I wrong about that? Not entirely. I think the charge is more accurately that they claimed that the college misstated retention rates, grades, and the status of the educational production that had taken place in an effort to retain eligibility on these grants. I'm sorry, what's your answer to Judge Fletcher's question? Do you remember the misrepresentation as to the composition of the student body? How many of them were tribal members? No, I think the misrepresentation was more as to their performance and their grades within the program. We understand that there are claims of misrepresentation as to performance and grades. Judge Fletcher asked you, and I'd like to know the answer, which is why I'm pressing the point, were the misrepresentation as to the composition of the student body? Not to my knowledge. And did the grading system have anything to do with whether the college was retaining Native American students and therefore keeping up a high enough percentage to be eligible for the grants? In so far as there were grades for Native Americans, yes, it had some relevance to that. Well, the grades allegedly were enhanced in order to keep them in school and keep the eligibility requirements. Isn't that correct? Isn't that the allegation anyway? The allegation is not correct, but that is the allegation. Yes. Well, you're finally getting to the answer to the question that I thought was going to be the answer. But then the reason I ask that question is going back to Correct. And I'm trying to figure out, okay, how many tribal members are properly in the school? And it turns out that part of the fight is how many tribal members are in fact properly at the school. Well, there's how many tribal members are in this school of nursing or the pre-nursing program. But as far as the allegations giving rise to the false claims, that's not dependent upon how many Native Americans are in the school. It's a general allegation about how the grades were provided and what representations were made to the granting authorities. Okay. Well, the point I was trying to get at, one of the white factors, which is to say purpose, and this may be relevant only at the margin. Okay. I'm with you. So, anyway, to close out with my time, Judge Morris examined not only the previous decision by this court sitting in Bank and Smith relative to the relationship between the tribe and the college. Judge Morris also went through a detailed analysis of the white factors to find that Salish Kootenai College is an arm of the Confederated Salish Kootenai Tribes. And I would say to this court, there has been a number of courts, including this court sitting in Bank and Smith, that have commented on the relationship between those two organizations. Let's talk about Smith. Obviously, you're not claiming Ereshkodikara because you can't claim against it. So, this must be Stare Decisis? Correct, Your Honor. But Smith did not involve any analysis of sovereign immunity, did it? Not directly, although it did analyze the civil jurisdiction. And if you look at Smith, it decided to look at other statutory schemes as it pertained to relationships between tribes and arms of the tribe. And one of those cases that it looked at was the Pink v. Modoc case. It had to do with the Modoc Housing Authority. And it equated Salish Kootenai College to the Modoc Housing Authority in which this court held specifically that the Modoc Housing Authority was an arm of the tribe. At the end of the day, Your Honor, the status of Salish Kootenai College has been adjudicated and litigated numerous times before this court, the Montana Supreme Court, and the tribal court. And Judge Morris looked at those other cases, but in addition did his own analysis under White as to whether or not it's the arm of the tribe. And I think, really, there's no doubt that it's the arm of the tribe and shares in the sovereignty of the tribe under the False Claims Act. Thank you so much for considering my case. And I'll turn my time over to Mr. Harrison. Your Honors, may it please the Court, my name is John Harrison. I'm here with the tribe's managing attorney, Rhonda Sweeney. This case does hinge on the status of the college. If the college carries a tribe's sovereign immunity, it is a sovereign. It's not subject to the False Claims Act. That's a matter of federal Indian law, and it's, Judge Kaczynski, why the tribes are here. There's no need to plow new ground with regard to status of the college. The Smith Court had an extensive record, had the benefit of the tribal court, the tribal appellate court, the Montana District Court. Let's say that's true, which I'm sure is true, and now the plaintiff in this case were to come up with a document that I mean, they haven't, but let's say they did. Why would what happened in Smith be binding here? I don't know what document that they would come up with that this... Well, use your imagination. I know you went to law school, that makes it hard, but... Well, if there's some smoking gun out there, Your Honor, I don't know what it would do to change the status of the college that hasn't been examined by numerous... Sign that there's a broad waiver... Really testing the proposition that we're bound by Smith, that whatever happened in Smith is binding here. Yes. And you're saying, they looked at a lot of stuff, and that's fine, but this is not collateral assault. This is not because this is a different party. So it has to be some idea that this is true as a matter of law, and forevermore, right? We're bound by that, and I'm just trying to test the proposition. I understand that, Your Honor. I think what they would be looking for would be some kind of document that shows there's a broad waiver of the tribal corporate capacity, something that allows them to... No, no. I was just fletching on that one. If you show a waiver, that doesn't tell you anything about... Right, and that would be our argument. Frankly, I'm not sure what they would find, because their argument is, in this context... Let's say they found a lawsuit that was filed where somebody sued the college and the tribe, and the tribe said, hey, it's not us. We're not liable because this is a separate entity, and made that representation in a court as a defense to a claim of tort or whatever, some contract or tort claim or something. That's what they're looking for. We're not liable. That actually took place. That was part of the Smith litigation, Your Honor, because in Smith, initially, the tribe and the college were sued. The tribe did a motion to dismiss and said, we are the tribal government. That is an arm of the tribes. You would sue them separately as an arm of the tribes, but in this case, you can't just name the tribes. That was examined, and it was still deemed that the college is an arm of the tribe. It is not the tribe itself, but is an arm of the tribe under an arm-of-the-tribe analysis. And to speak also to the functional direct liability analysis they're asking, that's an arm-of-the-state analysis. There's a separate body of law for an arm-of-the-tribe analysis. I'm not sure I understand your question. Let's say they come up with a lawsuit in state court where the tribe took the position, look, this is a separate entity. As a consequence of that, they get dismissed out, saying they win. Because, in fact, court holds, based on this representation, that the college is not a tribal state. You know about sort of judicial admissions. So let's say we throw that in the thing. What kind of thing would they come up with? So if they came up with something like that, would we still be bound by Smith? I think you would, because to begin with, I'm not sure they would get that discovery. If they pulled up that case, I think they would have done that already. The Montana Supreme Court has held... You're fighting the hypothetical. What you're doing is saying, oh boy, this is so far-fetched, I can't imagine it, I'm not going to answer it. Just imagine they come up with it. I wouldn't do that. Imagine they come up with it. So now you're faced with this piece of evidence. What does that do to our relationship to Smith? Do we say, too bad, it doesn't count? I think you would, Your Honor, and I would... No, that's the wrong answer. Meaning, it's not res judicata, as Judge Kaczynski has said. It's not collateral estoppel. It's got to be stare decisis. And they weren't deciding precisely the same question, and if it turns out we have a different record in this case from the record they have there, we have a different record and we might get a different answer. So you've got to foot up with the fact that if we get facts that really point to a different answer, we get a different answer. So you've got to say, it is so unlikely that there are facts out there hiding in the bushes that we can safely affirm the district court. I mean, that's what we have to be. Yes, Your Honor. That's pretty much it. Yeah, and probably inartfully, that's what I thought I was trying to say, which is it is... You said nothing of the sort. Okay, well... Let me assure you, you go back and watch the tape and you'll see, you said nothing like it. Okay, Your Honor. But now that Judge Fletcher has puzzled out for you, why isn't the answer then is, they should get discovery? If in fact, such a document would undermine the notion that, the tentative conclusion that Smith suggests, why don't they get discovery? Now that you've adopted Judge Fletcher's analysis, I would say, why haven't you painted yourself into that corner over there? How do you get to the door from there? I would say that it is so unlikely that the district court found that as a matter of this opinion, in this case... Okay, persuade me why it's so unlikely. Just explain it to me. What about those leases that counsel talks about? Your Honor, I am not sure that the status of the college has been... Would you mind if I got a drink? Your Honor, I just want to apologize to the court and to everyone in the courtroom for what happened. And I apologize. I think I might have asked my question harshly. So what I really want to know is, just tell me how you can persuade us that there really is no relevant evidence out there that we don't know about yet. I think, Your Honor, there was a lot of discovery already in this case. And I think they got the discovery they asked for. If there's any further questions on discovery, I would certainly defer to the college's attorney. I didn't mean to wander off into being obstructionist on that. I just... No, you're just back there. Any other lawyer who appears in front of us happens all the time. Right. Well, Judge Kaczynski, you're a famously hard examiner. And certainly, I'm living proof of that on the first case of the week. But I do want to apologize for having to take the time of the court. Okay, nothing to apologize for. Thank you for allowing me the extra time. I would simply ask that this court firm Judge Morris' well-reasoned decision. We do think that Smith v. Salish Community College is the product of a long record. It's been... The status of the college has been examined by numerous, numerous, numerous courts, including an en banc session of this court. And the status has always been clear. In the context of a defendant in a lawsuit, it's been deemed an attempt to harm the tribe. And it should be seen as such under the false claims. Can I ask one quick question? Maybe it's quick. The tribal articles are for Salish Kootenai Community College, Inc. And then Salish Kootenai College, Inc. is also an entity here. Can you explain the difference and whether that matters? For some reason, the college the same year decided they would incorporate under state law for whatever reason. I don't know. I would defer to the college's attorneys on that. I don't think that there's any real difference because it's still the same entity. And the Montana Supreme Court has ruled on the concept of tribes that incorporate also as tribal corporations. And in our brief, we cited the two cases, Coke v. Little Shell and the Flat Center Farm case. Let me ask you this. You're the counsel for the tribes, right? Yes, Your Honor. Okay. So are you presenting now that if the college incurs liability for anything, the tribe will stand and be responsible for any liability? That would be the direct or functional liability test. And the tribes would not. The college is an arm of the tribe. The tribes wouldn't be directly or functionally liable for monetary damages, but they would be harmed in the sense that the college would be, if some catastrophic lawsuit occurred and the college was gone, it would deprive the tribes of their only secondary educational and higher education. Well, that would be true whether it was an arm of the tribe or not. Yes. I mean, if they're gone, they're gone. It doesn't matter whether they're an arm of the tribe. So your answer to my question is no. So you are representing the court that the tribe will not stand liable for all liabilities incurred by the college? They would not, Your Honor. And you don't think that's significant? I'm sorry, Your Honor? You don't think that's significant? I don't because it's under an arm of the tribe analysis. It's still an arm of the tribe. And Stoner from the Ninth Circuit Court says we look to a sovereign immunity analysis to determine whether something is an entity, an educational entity, is covered by the sovereign immunity. Did an 11th Amendment functional liability arm of the state analysis in Stoner? Well, if it is an arm of the tribe, then it is. But you're sort of begging the question. You're assuming a conclusion. If it is an arm of the tribe, then it's covered by the we're testing here the proposition whether it is or not. And you're telling me it's not relevant that the tribe will not stand behind all liabilities of the college? Not relevant? Doesn't matter? No, I don't think it's relevant in a sovereign immunity analysis. It doesn't matter at all? Well, whether the college is an arm of the tribe is the question with regard to the false claims act. Well, we're trying to figure out whether it's an arm of the tribe. One way of telling you is, well, look, if they have liabilities, we, the tribe, assume all liabilities, we are responsible for them. That's one good, strong indication that they are. And you're telling me, no, that's not the case. And why shouldn't that be an important part of the analysis? I'm not saying it shouldn't be an important part of the analysis. It is a factor. My argument would be that it's not controlling. It's one of the factors in the white. Did the district court take that into account? The district court looked at white, looked at the factors of white, whether it stands as... I'm asking a specific question. Did the district court take what you have now disowned as the liability of the tribe into account in applying the white factors? Not directly, Your Honor, no. Well, you can't tell. Not expressly. The district court said that there was a long argument in front of Judge Morris with regard to the application of the white factors. His opinion simply says, I don't think it meets... I think it is an arm of the tribe. So, Judge Kaczynski, the response is, no, it's not in the opinion. It's not in Judge Morris's opinion, but it's in the record that we went through a long argument. Because the things that they want to look at, the financial arrangements, part of what they're trying to get at is financial responsibility of the tribe for the activities of the college. And you've just sort of conceded that whole issue away. You said, well, no need to look, because we're not responsible. The tribes aren't responsible for a judgment, but the tribes are connected with the college. That's always been our argument. And that's something that's been examined in Smith. It's an arm, even though the tribe is not responsible for any activities that might create liability, contract, tort, anything like that. Despite that, it's still an arm of the tribe. Well, the Tribally Controlled Community College Act requires... I mean, it's sort of convenient to have an arm that can do things, and then you're not responsible for it. It's a very convenient thing. It sounds to me a lot like a corporation, which... It's a nonprofit educational corporation. That's what it's been set at. The White decision says, whether it's a factor or whether it's financially liable is a factor, but it's not dispositive. And that's all we would say. I'm sorry to continue to take you over time. What do we know about other aspects of financial arrangements between the tribe and the college? Is there money that flows in either direction between the two entities? I know that this is nothing in the record. I can tell you that the council loans and provides loans to the college. I know the college leases tribal land for a nominal sum in perpetuity. I know that the Tribally Controlled Community College Act requires that there be an entire set of factors that connect the tribe to the college, but require an arm's length arrangement, presumably because they don't want the council running the day-to-day operations of the college or maybe have... So you tell us these things that are not on the record. They're not on the record because the other side didn't get to discover them. Why isn't that... Since you've now said there are things out there that are not in the record, why shouldn't they be able to go back and bring them in, these things that you know about that you are representing to us, but which are not in the record? And why isn't that probably in the record? And why shouldn't the district court make a new determination after these things that you talk about are, in fact, disclosed and put in the record? Your Honor, I would respond to that by saying the things I'm talking about were all part of the record in Smith v. Salish Kootenai College. They were all examined, the dual incorporated status to Judge Thunheim. And with regard to others, they've also had a lot of discovery, as you mentioned before. They had the opportunity to ask for things. And finally, I would say if we really want to get into more details about the arrangement of the college and it's what it is, I might at that point defer back to co-counsel, who's counsel for the college, who might know more about the details of that. Okay. Thank you. Okay. Well, thank you for your time. And again, I apologize for the delay, Your Honors. Thank you very much. No problem at all. We're glad that you're fine. Yes. Please affirm Judge Morse's opinion. Thank you. Thank you. Thank you, Your Honors. Do you always do that to opposing counsel? I never have before, but I'll try to refrain in the future as well. No, I'm glad that Mr. Harrison is okay and appreciate his willingness to get back up here. I think that shows a lot of character. Your Honors, I think it's important to recognize that Mr. Harrison was asked, what might there be out there? I apologize for interrupting, but I want to make sure I understand where we are. Is it true that you have conceded that the tribe is not a person with respect to the statute? And therefore, there's no liability of the tribe under the statute? I can see that the tribe has tribal immunity. The issue of whether or not the tribe is a person... I don't believe that issue has been resolved, and I don't think it's been adequately briefed in this case. I understand that there is a lower court decision out there that questions whether or not under the Coeur d'Alene case, a statute of general applicability is applicable to tribes, and that that may create some tension with the Stevens decision. Let me ask the question as precisely as I can. The federal statute, False Claims Act statute, provides liability for persons. Are you or are you not conceding that the tribe is a person within the meaning of the statute? I am not. You do not concede that? I'm sorry, I do not. Okay. I think we might have misunderstood what might have been conceded before. I thought I asked you that question, and you said yes. And Judge Kaczynski, I apologize. I must have misunderstood and thought that this was an issue as to whether we are contesting the tribe's sovereign immunity, which... I apologize. It's not uncommon. Okay. So that's back on the table. Okay. I got it. Okay. Getting back to my point, I think that the tribe has conceded that if there was a smoking gun out there, it might look like a broad waiver. And I think that we have such a document here. I think that's what the state articles are. I think the tribe has also conceded that there's not the in order to determine their arm under the FCA analysis. I think there's also the issue of control, which has been conceded here, which is that the Tribal Community College Act requires some separation, and so that there can't be the level of control. Now, I understand that arm of the state and arm of the tribe, while related, are not precisely the same question. But it's very familiar territory to me that the University of California is an arm of the state of California, but a judgment against the University of California is not a judgment against the state of California. And I don't know the background of that case well enough, Your Honor, to compliment on... It's just an established principle under law in California. I mean, that's just the way it is. And I don't think there's been a case, I don't think Smith does it, that establishes that the SKC is an arm of the tribe for purposes of an analysis under the False Claims Act. I think that the context is important, and that that was a different context. And I think we've identified several issues here today that would merit against a finding that SKC is an arm of the tribe in this context. And I think that the waiver, in particular, has to mean something. And... Is a sue or be sued clause in documents of any kind of tribal entity always a waiver of sovereign immunity? It is under the Marceau case, found that a sue and be sued clause was a waiver. But Marceau, that was vacated, wasn't it? They're taking back at some point... On different grounds. On different grounds. But it was subsequently confirmed by this court that that aspect of the ruling stood. And I think that that was the Cook v. AVI Casino Enterprises case that recognized Marceau's holding was valid. You don't think that's still a live issue in the circuit? It is still a live issue in the circuit. In fact, I could quote from Cook v. AVI Casino's Note 6. I have that here. This court confirmed that the issue of whether a sue and be sued clause in a tribe's enabling ordinance effectuates a waiver of tribal sovereign immunity remains a live issue for determination in the circuit. Now, I've said this before, and I'm trying to figure out what your position is on the point. My instinct is that whether or not the tribe has waived its sovereign immunity is really not relevant to the question. It's whether the federal statute attempts to impose liability upon the tribe. I mean, the statute either does it or doesn't do it. I think as to the tribe, that is correct. But as to the analysis of whether SKC is an arm of the tribe, that waiver has to be considered. Why? Because these corporations have to have the ability to waive their immunity for purposes of grants, contracts, and other arrangements. And the tribe conceded that in the briefing at the lower court, saying why does that matter as to the coverage of the statute? I'm sorry, Your Honor. I didn't mean to interrupt. No, no. I interrupted you. Because in determining whether or not SKC is an arm of the tribe, I think that's where the waiver issue enters into there. And whether or not the tribe is a person subject to the act, I think, as you recognize, is a separate situation. And that's this tension between the Stevens case and the Coeur d'Alene case. But I think the way to resolve that as to the specifics in this case is to recognize that if SKC has enacted a broad waiver of immunity, then it should not be considered as an arm of the tribe for purposes of the FCA. Okay. Thank you. Thank you, Your Honors. Cases are able to stand submitted.
judges: Kozinski, W. Fletcher, Tunheim